[Alabama Iron & Fuel Co. v. Benenante.]

# Alabama Iron & Fuel Co. *v.* Benenante.

## *Injury to Servant.*

(Decided November 10, 1914.   66 South. 942.)

1. *Master and Servant; Injury to Servant; Contributory Negligence.*
—Where the action was for injuries from the falling of a rock in a
mine and the negligence charged was in failing to provide a safe place
to work, a plea setting up plaintiff's contributory negligence in that
knowing that a rock in the room in which he was working was loose
and likely to fall, and that if it should fall while he was dangerously
near it, he would likely be injured, nevertheless, negligently worked
under or dangerously near it, and as a proximate result the rock
fell and injured him, was sufficient; nor was it objectionable because
of alternative averments.

2. *Same.*—A plea that plaintiff was informed of the condition of
the rock, and the roof of the mine when injured, and knowing that
it would be likely to fall, and likely to injure him, negligently placed
himself under it, and was injured, was insufficient for a failure to
aver that such negligence on plaintiff's part proximately contributed
to his injury.

3. *Trial; Argument of Counsel.*—Remarks of counsel in his closing
argument that defendants in damage suit always deny that they are
guilty and bring witnesses to swear to it, and that counsel had
always represented poor, country people and widows and orphans
before the court, that defendant's attorneys represented corporations,
and that if a man was hurt by a railroad car left standing on a side-
track, the company would come into court and beat him out by
bringing eye witnesses to swear that they were on the car, and saw
the whole occurrence, were grossly improper, and had a natural tend-
ency to prejudice the jury against defendant.

4. *Same.*—Where defendant promptly objected to such remarks of
counsel and moved the court to exclude them, and the presiding judge
merely stated in each instance that the jury were not to consider
such remarks in deciding the case, but did not ex mero motu exclude
the statements or reprimand or admonish counsel, and counsel per-
sisted in such statements, and did not offer to withdraw them, such
action on the part of the court was not evidence of such disapproval
as to take the impression of such remark from the jury.

5. *Same; Discretion of Court.*—What shall be admitted in argu-
ment outside of the evidence by way of comparison, illustration; or
conclusion; the degree of invective allowed counsel; the duration
of argument and the like, are all subject to judicial regulation, and
in nisi prius trials must necessarily be left to the sound discretion
of the trial judge.

APPEAL from Shelby Circuit Court.

Heard before Hon. HUGH D. MERRILL.

[Alabama Iron & Fuel Co. v. Benenante.]

Action by Joe Benenante against the Alabama Fuel & Iron Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The first count, after setting out the relationship and the fact that plaintiff was injured by a large rock falling on him while in the pursuit of his employment in the coal mine, avers the negligence to consist in the failure of the defendant to provide plaintiff with a safe place in which to work. The second count is based on a defect in the ways, works, etc., in that the roof of the mine was so defective, insecure, and unsafe, as to cause the rock to fall. The third count is based on the negligence of the superintendent whilst in the exercise of superintendence in failing to warn plaintiff of the dangers of said roof. The fourth count is based on the negligent orders of the superintendent in directing plaintiff to enter said room and work in said mine when he knew it to be dangerous. Amended count A is practically the same as count 3. Amended count B is the same as count 4. Amended count C claims for the failure of defendant to promptly deliver or cause to be delivered props and timbers to plaintiff's working place in said mine, with the allegation that prior to the injury plaintiff had selected and marked said props and timbers, and designated thereon the place where the same were to be delivered. Amended count D is similar to count 2. Amended count E is similar to count 3. Plea 6 sets up that plaintiff was informed of the condition of said rock and the roof of said room at the place of his said injury, and, knowing that the same was liable to fall at any moment and likely injure him, negligently placed himself under the same, and was injured. Pleas 5 and 6 were filed to the amended counts of the complaint.

STOKELY, SCRIVNER &. DOMINICK, for appellant. The court erred in sustaining demurrer to plea 5 as an answer to counts D, E and F.—*Black v. Roden C. Co.*, 59 South. 497; *Simmerman v. Hill C. C. Co.*, 54 South. 427; *B. R. L. & P. Co. v. Nicholas*, 61 South. 367; *Merriweather v. Sayre M. & M. Co.*, 161 Ala. 441. The court also erred in sustaining demurrer to plea 6 as an answer to count D, E and F.—Authorities supra. The court erred in refusing written charge 3, 10, 12, 15, B-b. —Authorities supra. The action of the trial court did not cure the gross, improper and highly prejudicial arguments permitted counsel, and for this reason alone, the case should be reversed and remanded.—38 Cyc. 1479; *Florence Co. v. Fields*, 16 South. 540; *B. R. L. & P. Co. v. Drennen*, 57 South. 880; *B. R. L. & P. Co. v. Gonzales*, 61 South. 83.

BLACK & SADLER, and RIDDLE & ELLIS, for appellee. The court properly sustained demurrers to plea 5.— *Coosa P. & F. Co. v. Poindexter*, 62 South. 104. The court also properly sustained demurrer to plea 3.—*Porter v. T. C. I. & R. R. Co.*, 59 South. 255. Plea 6 was subject to the demurrer.—*Black v. Roden C. Co.*, 59 South. 497; *Gardner v. B'ham M. & F. Co.*, 59 South. 649. Contributory negligence is not a defense to an action brought under the 2nd subdivision of the Employer's Liability Act.—*Woodward I. Co. v. Andrews*, 21 South. 440; *L. & N. v. Handley*, 56 South. 539; *Harbison W. Co. v. Ross*, 62 South. 1009. Counsel discuss the alleged error relative to improper remarks of counsel, but without citation of authority.

CRUM, J.—The substantive averments of plea 5 are: "That the plaintiff was guilty of negligence which proximately contributed to his alleged injuries, in this:

Plaintiff, well knowing that a rock in the room · in which he was working as a miner in defendant's mine was loose and likely to fall, and that if same should fall while he was under or dangerously near the same he would likely be injured, nevertheless negligently worked under or dangerously near said rock, and as a proximate consequence of his said conduct the rock fell upon him and he received his alleged injuries and damages."

There is no material difference between this plea and pleas D and 5 held good in the case of *Black v. Roden Coal Co.,* 178 Ala. 531, 59 South. 497; nor is the plea subject to the objection pointed out to plea 3 in the case of *Porter v. T. C. & I. Co.,* 177 Ala. 406, 59 South. 255. That plea was held bad because of its alternative averments; the court saying: "The allegation that plaintiff's intestate knew that a part of the roof was 'in danger of falling,' and that, should the same fall, injury would result, is not sufficient. A person working in such a business must know that there is danger all the time; yet, unless the danger is imminent and he acts negligently in regard thereto, he cannot be said to be contributorily negligent." And that "for a like reason the other alternative statement, to wit, that he had knowledge that 'a part of the top or roof of said mine was loose,' is defective. It does not show what was the extent of the looseness. It may have been so slight as not to suggest danger."

It will also be observed that the plea in that case did not aver that the plaintiff negligently went under or near the rock which fell upon him. The trial court erred in sustaining the demurrer to plea 5 to certain counts of the complaint.

Plea No. 6 is manifestly bad, in that it does not aver that the negligence on the part of the plaintiff proxi-

mately contributed to his injury,, and there was no error in sustaining the demurrer thereto.

The questions arising upon the rulings of the trial court in refusing certain special charges requested by appellant and in the admission of evidence may not arise on another trial, and are therefore not considered.

In the course of his concluding argument, one of the plaintiff's counsel made the following several statements to the jury:

"In damage suits, defendants always deny that they are guilty, and bring witnesses to swear it. * * * I represent country people and poor people before the jury, and Mr. Dominick, the defendant's lawyer, represents corporations; and, in the five years of my practice at the Columbiana Bar, I have always been representing poor people. * * * I represent widows and orphans before this court, and the gentleman on the other side represents great companies. * * * If a man is hurt by a railroad car which is left standing on a side track for several days, the railroad company will come into court and beat him out by bringing one or two eyewitnesses to swear that they were on the car and that they saw the whole occurrence."

As each of these several statements was made,. counsel for the defendant promptly objected and moved the court to exclude them from the consideration of the jury. The presiding judge in each instance said to the jury, "Gentlemen, that argument is not to be considered by you in deciding this case." The jury having returned a verdict in favor of the plaintiff, the defendant moved the court to vacate the judgment entered thereon and to grant a new trial, assigning, among other grounds, the foregoing quoted remarks of counsel. The trial judge denied the motion, and this action is now

assigned as error. The motion did not allege that the remarks did in fact prejudice the defendant.

There was not, and could not properly have been, any issue, or any evidence, or any event, in this case that in even the remotest degree justified or excused such remarks. They were grossly improper, and, coming as they did in the closing argument, when there was no opportunity to reply, were unquestionably highly calculated to prejudice the minds of the jury against the defendant. While the action of the presiding judge on the objections of appellant's counsel was favorable to appellant in the sense that no assignment of error could be predicated upon it, the admonition to the jury appears to have been merely perfunctory; the same words being used in each instance. The court did not ex mero motu exclude the statements; no further reference to or comment upon them was made by the court to the jury, in charge or otherwise. Counsel from whom they emanated was neither reprimanded nor admonished by the court. Not only was there no offer from counsel to withdraw them; but, on the contrary, he persisted in the same line of argument, although his attention had been repeatedly called to its improper character by objections of counsel and rulings of the court.

Certainly, when improper argument is made, objection by the opposing party should be promptly made, and the attention of the presiding judge called thereto, in order that he may then and there, in the proper way, express his disapprobation and as effectually as possible eradicate from the minds of the jury any impression thereby created.

"Nothing short of such action on the part of the court, * * * and a clear satisfaction that the injustice thereby done has been removed, should rescue the case from error on appeal, or from a new trial, on

the motion of the party against whom it was rendered."
—*Scott v. State,* 110 Ala. 48, 53, 20 South. 468, 470.

In *Florence C. & I. Co. v. Field,* 104 Ala. 471, 480, 16
South. 538, 540, the court sustained an objection to a
remark of counsel, and stated to counsel making it that
the remark was improper, whereupon counsel remark-
ed, "Well, I withdraw the remark." No exception was
reserved, and no motion for a new trial was made. The
court said: "The remark was calculated to seriously
prejudice and injure the defendant with the jury. The
action of the court in excluding it was very mild, and
not a sufficient antidote to the poison that had been in-
jected into the minds of the jury by the use of such lan-
guage. Verdicts ought not to be won by such methods,
and when an attorney, in the heat of debate, goes to
such extraoridnary lengths, generally, the court should
promptly set aside any verdict that may be rendered for
his client. The repressive powers of a court, to prevent
such departures from legitimate argument of a cause
before a jury, should be vigorously applied. No mere
statement that it is out of order or improper can meet
the exigencies of the case."

See, also, *Johnston v. Brentley,* 2 Ala. App. 281, 56
South. 742; *Hammock v. State,* 7 Ala. App. 112, 61
South. 471.

It was said by that eminent judge, Stone, in com-
menting upon an improper argument of counsel: "The
court might, and  *  *  *  should, have arrested it
ex mero motu. It is one of the highest judicial func-
tions, to see the law impartially administered, and to
prevent, as far as possible, all improper extraneous in-
fluences from finding their way into the jury box. And
when opposing counsel objected to the improper lan-
guage employed, and called the attention of the court
to it, it was not enough that offending counsel replied,

'Oh, well, I'll take it back.' Such remark cannot efface the impression. The court should have instructed the jury, in clear terms, that such remarks were. not legitimate argument, and that they should not consider anything, thus said, in their deliberations. Nothing short of a prompt, emphatic disapproval of such line of argument, and that from the court itself, can avert the probable mischief."—*Wolffe v. Minnis,* 74 Ala. 386, 389.

The correction should have been as broad as the error committed.

This court and the Supreme Court of this state have firmly planted themselves against the practice of indulging in such grossly improper remarks and argument in the presence of the jury, and the effort to get before them evidence clearly incompetent and illegal, for the evident, deliberate, and sole purpose of arousing and inflaming prejudice in the minds of the jury, and verdicts have been set aside in cases where the language of counsel was less objectionable than in this. The case of *Birmingham Railway, Light & Power Co. v. Drennen,* 175 Ala. 338, 57 South. 376, Ann. Cas. 1914C, 1037, affords a striking example of the views of the Supreme Court on this subject. Judge Mayfield, speaking for the court, reviewing the authorities, treats the subject ably and exhaustively, and but little, if anything, can be added to what was there said. In that case, although the objection to the remarks of counsel in question was sustained, the remarks were nevertheless made the basis of a motion for a new trial, and the Supreme Court held that the motion should have been granted. It was there said:

"This court has repeatedly and in strong language condemned remarks of counsel less offensive and less offending than those used in this case, and has awarded new trials where the trial court failed or refused to

take prompt and decisive action to eradicate such erroneous impressions, and has done this in cases even where counsel making such argument had done all he could to cure his error; that is, by retracting the offensive remarks."

In the case of *L. & N. R. R. Co. v. Grimes,* 184 Ala. 431, 63 South. 554, that court, in considering a statement of counsel to the jury as follows, "If you delay a train an hour or two, they will have All and Brooks and all the detectives on your trail, and if you don't watch out they will catch you," said: "The part of the argument of plaintiff's counsel that was excepted to was not warranted by the evidence or by the legitimate conclusions to be deduced therefrom and should have been excluded upon objection of the defendant. Whether or not the condition of the record shows such action or failure to act, on the part of the trial court, as to amount to reversible error in this respect, we need not decide, as this cause is reversed for other reasons. It is sufficient to say that such argument is not to be commended and should not be indulged in upon the next trial."

In *Watson v. Adams,* 65 South. 528, the Supreme Court was addressing itself to the impropriety of admitting and subsequently excluding illegal evidence, because of its probable effect upon the jury. In that case, after the evidence had been introduced and upon the close of the case, counsel at whose instance the evidence was introduced stated to the court voluntarily, in the presence of the jury, that he desired to have that part of the testimony excluded from consideration by the jury. The trial court thereupon said to the jury: "That will not be before you for consideration." The Supreme Court said that, in view of the manifest evi-

dential effect of the witness' cross-examination on the subject:

"We are clear to the point that what was said and done, by counsel and by the court, fell far short of full, due effect to eradicate from the minds of the jury the 'unfavorable and erroneous impression,' * * * made thereby.".

In the case of *Birmingham Railway, Light & Power Co. v. Gonzales*, 183 Ala. 273, 61 South. 80, the Supreme Court by unanimous opinion at first reversed the judgment of the trial court for having allowed improper remarks of counsel, but upon rehearing the judgment or reversal was set aside and the judgment of the lower court affirmed (DOWDELL, C. J., and SOMERVILLE, MC-CLELLAN, and SAYRE, JJ., concurring; ANDERSON, MAY-FIELD, and DE GRAFFENRIED, JJ., dissenting); the reason stated being that the exception was taken to the rulings collectively and not separately, and because it did not sufficiently appear that the objections were made and called to the court's attention at the time each statement was made. It was also said, it must be noted, that the grounds assigned for the new trial were merely that the several remarks were made to the jury, and that this was not sufficient to charge that the remarks "affected the jury in the production of a verdict unfavorable to the defendant or excessive in amount." This latter holding, we assume, necessarily resulted, in the light of former decisions, from the fact that the court was unwilling to say "from the dim light afforded by the record, that they [the remarks] were, as made, either grossly improper or highly prejudicial." The court further said: "Each case of this character must be decided upon its own merits.. There is no horizontal rule by which these qualities can be ascertained in all cases. Much will depend upon the issues, the par-

ties, and the general atmosphere of the particular case."

The remarks to which the court was there address-ing itself were those of counsel for the plaintiff in a personal injury suit against a corporation, viz., "We give them valuable franchises," and, "Millions of nickels and dimes go into the coffers of the company and to the stockholders."

We have no hesitation in saying that the remarks in the instant case were decidedly more objectionable than those to which the court was addressing itself in the case cited, and that they were grossly improper and highly calculated to prejudice the defendant. When the question of liability is sharply in conflict and close, and a verdict results against the party thus criticised, how can it be known just what influence the remarks may have exerted upon the jury as a whole, or upon some individual member? Whence came such supernatural power?

"Every one, familiar with the practice, knows how difficult it is to eradicate from the mind of a jury an injurious impression thus created * * * by permitting illegal proof to be submitted to them, and in such case nothing short of a direct and unequivocal charge to them to disregard the illegal proof would be likely to erase the impression."—*Carlisle v. Hunley,* 15 Ala. 625, quoted approvingly in *Watson v. Adams, supra.*

The rule would seem to be, as is announced in several of the cases cited supra, that it is sufficient objection if the argument is grossly improper and its natural tendency is to be highly prejudicial. The argument should be accorded just that purpose which its author intended it should serve—nothing less.

In *Shelby Iron Co. v. Greenlea,* 184 Ala. 496, 63 South. 470, the Supreme Court, reversing the judgment of the trial court for its refusal to exclude the state-

ments of counsel, said: "This argument was wholly improper, and the trial court should have excluded it. *Its natural tendency, if not its purpose,* was to prejudice the jury. It contains statements of fact not supported by the evidence, and announced in court propositions of law, all of which were *calculated* to prejudice, and probably did prejudice, the jury." (Italics ours.)

In the determination of the question as to what shall be admitted in argument to the jury outside of the evidence adduced in the case, by way of comparison, illustration, or conclusion, the degree of invective allowed to counsel, the duration of argument, and the like, of course is subject to judicial regulation, and in nisi prius trials much must necessarily be left to the exercise of a wise, just, and sound discretion of the trial judge. The boundaries which separate legitimate argument from an attempt to introduce covertly facts which may have a bearing on the case, but which are unconnected with the evidence, are often delicately drawn and difficult to determine; but this only accentuates the duty and the great responsibility of the trial lawyer. His true position before the jury is that of an aid and assistant. He is an officer of the court, amendable to its authority and subject to its correction. It is said: "However unrestricted he may or ought to be in the use of all the forms of rhetoric, such as invective, satire, ridicule, or humor, and every variety of illustration drawn from the facts in evidence, or from facts hypothetically assumed, he ought not to be allowed in argument to make himself a witness and state facts either within or without his own knowledge touching the case under discussion, unless he shall have first been sworn and submitted himself to cross-examination."

[Alabama Iron & Fuel Co. v. Benenante.]

It would seem utterly vain and useless to caution jurors in the progress of a trial against listening to or participating in conversations out of the courtroom in regard to the merits of a case on trial, if they are to be permitted to listen in the jury box to statements of facts, not in evidence, calculated to have a bearing upon their judgment, enforced and illustrated by all the eloquence and ability of learning, zealous, and interested counsel. "Statements of fact not proven and comments thereon are outside of the cause; they stand legally irrelevant to the matter in dispute and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel."

Too often are illegal questions asked of witnesses and improper remarks made by counsel in the presence of the jury with the knowledge or the belief that, although they may be excluded, they will nevertheless abide or linger in the minds of the jury and probably produce the desired result. If it be said that reversal of the judgment in such cases may work a hardship upon appellee, it results from the conduct of him who stands as his sponsor in the trial. We know of no more effective way of repressing the wrong and maintaining the integrity of the profession in the admission of the law.

That the trial judge failed to exercise sufficiently his "repressive powers" seems manifest. The motion for a new trial should have been granted.

Reversed and remanded.